# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ELWIN HART, | ) |
|       Petitioner, | ) |
| v. | )   CAUSE NO.: 3:15-CV-172-TLS |
| SUPERINTENDENT, | ) |
|       Respondent. | ) |

## OPINION AND ORDER

Elwin Hart, a prisoner proceeding pro se, filed a habeas corpus petition challenging his state court convictions for murder, carrying a handgun without a license, and possession of marijuana by the Marion Superior Court under cause number 49G01-1002-MR-13454, for which he received an aggregate 110 year sentence on June 10, 2010. The Respondent argues that all four of Hart's claims are procedurally defaulted and, alternatively, not cognizable in this federal habeas proceeding. For the reasons set forth below, the Court agrees. Accordingly, the Court **DENIES** the Petition, **DENIES** the Petitioner a certificate of appealability, and **DISMISSES** the case.

## BACKGROUND

In deciding this habeas petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Hart's burden to rebut this presumption with clear and convincing evidence. *Id.* On appeal from the denial of post-conviction relief, the Indiana Court of Appeals set forth the facts surrounding Hart's offenses as follows:

> In February 2010, Chad Nickle, his girlfriend Elizabeth Newcomer, his mother Linda Nickle, and Linda's boyfriend Hart all lived together in a house on the southwest-side of Indianapolis. Chad and Elizabeth, who were engaged to be

married, had recently moved in with Linda and Hart to help them pay bills. In addition, Linda and Hart had recently purchased a white Chevy Silverado truck that Hart drove.

Chad worked out of state for eleven months of the year doing environmental demolition and was in Milwaukee, Wisconsin, on February 20, 2010. On that morning, Elizabeth called Chad and told him that she had found a baggie of white powder that she suspected to be cocaine. Chad instructed Elizabeth and Linda to go to a nearby bike shop, Thugs Incorporated Choppers, so that his friend Dennis Gibson could test the white powder. Dennis, who had experimented with cocaine before, tasted the powder and concluded that it was cocaine. Based on this information, Chad told Elizabeth to tell his mother that Hart had to move out. Chad directed the women to call him right after they told Hart the news. Dennis also told the women that if they needed help evicting Hart, they should call him.

Around 2:00 p.m., Chad still had not heard from his fiancee or mother. Because Chad was concerned that he could not reach them by phone, he had Dennis and another bike shop employee go to the house. They knocked on the door, but no one answered. They spotted Elizabeth's red truck in the driveway but not Hart's white truck. Dennis called Chad to report their findings.

Around 4:00 p.m., Chad received a concerned call from Elizabeth's mother because Elizabeth did not show up at a family event. Chad then contacted a childhood friend, Daniel Sprouse, and asked him to go to the house. At the time, Daniel and his wife were in Noblesville at a swim meet. When Daniel arrived at the house, he observed Elizabeth's red truck in the driveway and Linda's car in the garage. Hart's white truck was not there. Chad instructed Daniel to ring the doorbell, pound on his mother's bedroom window, and beat on the garage door. Chad and Daniel stayed on the phone the entire time. When there was no response, a frantic Chad instructed Daniel to break in. Daniel broke a window on a door that led to the garage and entered the house. Upon entering the living room, Daniel started screaming to Chad over the phone that Elizabeth and Linda were dead. Both had been shot in the head and were sitting upright with the television still on. A dropped coffee cup was at Linda's feet. Elizabeth was shot three times, and Linda was shot once. Daniel rushed out of the house and told his wife to call 911. While Daniel and his wife were standing in the middle of the street waiting for emergency responders, they noticed a white Chevy truck that they believed to be Hart's parked on the wrong side of the street about 200 feet away. Daniel and his wife called 911 again. Fearing for their safety, Daniel and his wife took shelter in their car. The white truck backed up and disappeared.

Emergency responders arrived at 5:08 p.m. and confirmed that Elizabeth and Linda were dead. Their identifications and cell phones were missing, but there were no other signs of a robbery, as nothing was missing and the house was in a

neat and orderly condition. Police recovered a baggie of white powder from the kitchen, but it was later determined not to be cocaine.

In the meantime, Hart called his boss, Victor Fleming, and left two voicemails saying that he would not be at work on Monday. According to Victor, the first voicemail stated:

Victor, it's me, Elwin Hart. I'm calling you to thank you for the opportunity to work with Laker Medical. You are great people and I enjoy to work [sic] with you. I hope everything will be better, but I won't be able to come back to work on Monday because something is not—something went wrong.

Tr. P. 307, 314. According to Victor, the second voicemail stated:

Thank you for the opportunity. Thank you for you guys. You guys are good people and I appreciate the opportunity to work with your company, but I won't be able to go back to work on Monday since I did something very wrong and I'm about to turn myself in to the police.
*Id.* at 311, 314.FN1

> FN1. Victor said that both voicemails had been recorded by a detective; however, by the time of trial, that detective had died and neither the voicemails nor a transcript of the voicemails could be found.

Hart then went to Lynhurst Baptist Church, where he had been attending services for several years. He called 911 from the church at 5:17 p.m. and told the dispatcher that he was calling to report a double homicide that had occurred at his residence and he would meet the police at the front door of the church. While inside the church, Hart encountered longtime church member Shirley Clements who was there for her granddaughter's wedding. The wedding was over, and the wedding party and family had finished taking pictures and were getting ready to go to the reception. Hart asked Shirley if he could see the pastor. Shirley said that the pastor had just left. Hart responded that he wanted to see the pastor "but that he couldn't wait any longer" because "the police were on their way out there to arrest him." *Id.* at 203. When Shirley asked him "[w]hat in the world ... the police [were] going to arrest [him] for," Hart responded that he had "shot Linda and her future daughter-in-law" around noon." *Id.* Hart added that "he wasn't going to let them frame him the way they were trying to do." *Id.* When Hart explained that he had come to church to pray with the pastor, Shirley said she would pray with him instead. Shirley then summoned her nearby husband, and the three of them prayed on the spot. After the prayer, Hart and Shirley hugged, and Hart said that he was going to wait for the police outside. Because Shirley had to get to the wedding reception, she had a church elder, Bruce Litton, wait with Hart. While they were

3

waiting, Hart told Bruce that Linda had found some white powder in the kitchen and claimed it was his. Linda then had the white powder tested at a motorcycle shop to see if it was in fact cocaine. Hart was adamant during his conversation with Bruce that he did not use cocaine. Hart explained that he and Linda got into an argument over whether the substance was in fact cocaine, at which point Linda told him to move out. At this point, police pulled up and ordered Hart to show his hands. When the police asked where the weapon was, Hart responded that it was in his truck. A search of Hart's truck revealed a pistol, two magazines, and a box containing marijuana. The forensic testing from the pistol was "inconclusive," meaning that the pistol could not be identified or eliminated as the murder weapon. *Id.* at 269. Nevertheless, the testing on the bullets recovered from the victims showed that all four bullets were fired from the same gun.

Days later, the State charged Hart with two counts of murder, Class A misdemeanor carrying a handgun without a license, and Class A misdemeanor possession of marijuana. A three-day jury trial was held in May 2011. The jury found him guilty as charged, and the trial court sentenced him to an aggregate term of 110 years.

*Hart v. State,* No. 49A02–1107–CR–583, slip op. at 2–6 (Ind.Ct.App. Mar. 13, 2012).

On direct appeal, Hart challenged the sufficiency of the evidence to support his conviction. [On March 13, 2012,] [h]is conviction was affirmed. *Id.* at 2. [Petitioner failed to timely seek transfer to the Indiana Supreme Court. Ex. C].

On April 12, 2012, Hart filed a petition for post-conviction relief, challenging Shirley Clement's testimony, Victor Fleming's testimony, and Daniel Sprouse's "braking [sic] into the primises [sic]." (App.3.) On March 19, 2014, the post-conviction court held an evidentiary hearing at which Hart presented argument but no evidence or exhibits.

On June 3, 2014, the post-conviction court issued its findings of fact, conclusions of law, and order denying Hart post-conviction relief.

Ex. J at 2-6.

On appeal from the denial of post-conviction relief, Hart raised a number of claims challenging the admissibility of evidence at his trial. (*See* ECF No. 6-7.) The Indiana Court of Appeals ruled that the admissibility of evidence claims were known and available on direct appeal and therefore, forfeited on post-conviction review. (Return to Order to Show Cause, ECF

4

No. 6-10.) The court of appeals went on and held that to the extent Hart was attempting to raise a sufficiency of the evidence challenge, such a claim was barred by *res judicata*. (*Id.*) Hart sought transfer with the Indiana Supreme Court, raising those same claims. (ECF No. 6-11.) The Indiana Supreme Court denied transfer. (ECF No. 6-3.)

Hart then filed a habeas corpus petition here, challenging the admissibility of his firearm, Victor Fleming's testimony, the entry into the residence, and Shirley Clements' testimony. (Pet., ECF No. 1.)

## ANALYSIS

Hart's Petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court can grant an application for habeas relief if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Before considering the merits of a habeas petition, a federal court must ensure that the

5

petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). The exhaustion requirement is premised on concerns of comity; the state courts must be given the first opportunity to address and correct violations of their prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claims in one complete round of state review. *Baldwin v. Reese*, 541 U.S. 27, 30–31 (2004); *Boerckel*, 526 U.S. at 845.

The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a habeas petition when either: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *Perruquet*, 390 F.3d at 514. When a habeas petitioner fails to fairly present his claim to the state courts and the opportunity to raise that claim has now passed, the claim is procedurally defaulted. *Boerckel*, 526 U.S. at 853–54.

### A.     Hart's Claims are Procedurally Defaulted.

The Respondent argues that the claims raised in Hart's Petition—the admissibility of his firearm, the admissibility of Victor Fleming's testimony, the entry into the residence, and the admissibility of Shirley Clements' testimony—are procedurally defaulted. The Indiana Court of Appeals held that Hart's challenges to the admissibility of this evidence at his trial were procedurally defaulted:

6

> Post-conviction procedures do not afford petitioners with a "super-appeal"; rather, the post-conviction rules contemplate a narrow remedy for subsequent collateral challenges to convictions. *Reed v. State,* 856 N.E.2d 1189, 1194 (Ind. 2006). The purpose of a petition for post-conviction relief is to provide petitioners the opportunity to raise issues not known or available at the time of the original trial or direct appeal. *Stephenson v. State,* 864 N.E.2d 1022, 1028 (Ind. 2007). If an issue was known and available but not raised on direct appeal, the issue is procedurally foreclosed. *Id.* If an issue was raised and decided on direct appeal, it is res judicata. *Id.* Moreover, collateral challenges to convictions must be based upon grounds enumerated in the post-conviction rule. *Shanabarger v. State*, 846 N.E.2d 702, 707 (Ind. Ct. App. 2006), *trans. denied; see also* Post–Conviction Rule 1(1).
>
> To the extent that Hart attempted to challenge the admission of certain trial testimony, this was available to him on direct appeal. The issue is now procedurally foreclosed. To the extent that Hart attempted to challenge his convictions by claiming insufficiency of the evidence, this issue was raised on direct appeal and is *res judicata.*

(ECF No. 6-10 at 7–8.)

As the court of appeals noted that, because each of Hart's claims were known and available on direct appeal, they could not be raised for the first time on post-conviction review. The Indiana Court of Appeals' holding that Hart's claims were procedurally defaulted serves as an adequate and independent state ground that blocks federal review here. *Coleman*, 501 U.S. at 735; *Szabo v. Walls*, 313 F.3d 392 (7th Cir. 2002). Because each of Hart's four claims were raised, considered, and found to be procedurally defaulted in his state post-conviction proceedings, they are procedurally defaulted here, too.

To the extent Hart is raising a challenge to the sufficiency of the evidence, he failed to raise that claim to the Indiana Supreme Court on direct appeal. (ECF No. 6-2.) After the Indiana Court of Appeals denied his direct appeal, Hart failed to timely seek transfer. (*Id.*) Therefore, his petition was not filed. Because he did not raise these claims in one complete round of state review, they are procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (a

7

prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort has not properly presented his claims to the state courts); *Hough v. Anderson*, 272 F.3d 878, 892 (7th Cir. 2001) (petitioner who failed to raise his claims in a petition to transfer with the Indiana Supreme Court procedurally defaulted those claims).

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2382 (2009). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Although he filed a traverse further complaining about the admission of various evidence at his trial, Hart does not attempt to show cause or prejudice.

A habeas petitioner can also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006). To meet this exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's[.]" *Buie v. McAdory*, 341 F.3d 623, 626–27 (7th Cir. 2003). Furthermore, actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To support a claim of actual innocence the petitioner must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

8

evidence—that was not presented at trial," *id.*, and must show that "in light of new evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt," *House*, 547 U.S. at 537. This is a difficult standard to meet, and such claims are "rarely successful." *Schlup*, 513 U.S. at 324. Hart does not attempt to establish that any such fundamental miscarriage of justice would occur. As a result, Hart cannot excuse his default and habeas review is precluded on this claim.

B.      **Hart's Claims are Not Cognizable in This Proceeding.**

Even if Hart's claims were not procedurally defaulted, they are not cognizable in these proceedings. As the Respondent points out, federal habeas corpus does not ordinarily lie to review questions about the admissibility of evidence. *McGuire*, 502 U.S. at 72; *Haas v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990). "[S]tate court evidentiary rulings rarely will serve as grounds for granting a writ of habeas corpus." *Lilly v. Gilmore*, 988 F.2d 783, 789 (7th Cir. 1993) (citations omitted). "Unless it is shown that 'a specific constitutional right has been violated, a federal court can issue a writ of habeas corpus only when a state evidentiary ruling violates the defendant's right to a fundamentally fair trial' under the Due Process Clause." *Id.* (quoting *Haas*, 910 F.2d at 389). Here, Hart does not identify or cite to any specific constitutional right that he believes has been violated due to the admission of the complained of evidence.

C.      **Hart is Not Entitled to a Certificate of Appealability.**

As a final matter, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the

evidence—that was not presented at trial," *id.*, and must show that "in light of new evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt," *House*, 547 U.S. at 537. This is a difficult standard to meet, and such claims are "rarely successful." *Schlup*, 513 U.S. at 324. Hart does not attempt to establish that any such fundamental miscarriage of justice would occur. As a result, Hart cannot excuse his default and habeas review is precluded on this claim.

B.      **Hart's Claims are Not Cognizable in This Proceeding.**

Even if Hart's claims were not procedurally defaulted, they are not cognizable in these proceedings. As the Respondent points out, federal habeas corpus does not ordinarily lie to review questions about the admissibility of evidence. *McGuire*, 502 U.S. at 72; *Haas v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990). "[S]tate court evidentiary rulings rarely will serve as grounds for granting a writ of habeas corpus." *Lilly v. Gilmore*, 988 F.2d 783, 789 (7th Cir. 1993) (citations omitted). "Unless it is shown that 'a specific constitutional right has been violated, a federal court can issue a writ of habeas corpus only when a state evidentiary ruling violates the defendant's right to a fundamentally fair trial' under the Due Process Clause." *Id.* (quoting *Haas*, 910 F.2d at 389). Here, Hart does not identify or cite to any specific constitutional right that he believes has been violated due to the admission of the complained of evidence.

C.      **Hart is Not Entitled to a Certificate of Appealability.**

As a final matter, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the

court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons fully explained above, Hart's claims are procedurally defaulted, and he has not provided any meritorious basis for excusing his default. Even if they were not defaulted, they would not be cognizable in this proceeding. The court finds no basis to conclude that jurists of reason could debate the outcome of the Petition or find a reason to encourage Hart to proceed further. Accordingly, the Court declines to issue Hart a certificate of appealability.

## CONCLUSION

For these reasons, the Court **DENIES** the Petition, **DENIES** the Petitioner a certificate of appealability, and **DISMISSES** the case.

SO ORDERED on January 11, 2017.

                                 s/ Theresa L. Springmann
                                 THERESA L. SPRINGMANN
                                 UNITED STATES DISTRICT COURT
                                 FORT WAYNE DIVISION